UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID DIEHL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | ) | Civil Action No. 24-2089 (PLF) |

OPINION

The plaintiff, David Diehl, proceeding pro se and in forma pauperis, brings this lawsuit against the defendant, the United States Department of Justice ("DOJ"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. See Complaint ("Compl.") [Dkt. No. 1] at 1. Currently pending before the Court are Diehl's Motion for Summary Judgment ("Pl. MSJ") [Dkt. No. 24] and the DOJ's Cross-Motion for Summary Judgment ("DOJ MSJ") [Dkt. No. 30]. Based on the Court's review of the entire record, and for the reasons stated below, both motions will be held in abeyance pending additional briefing, as the Court requires additional information about the searches conducted by the Federal Bureau of Investigation ("FBI").

## I. BACKGROUND

### *A. FOIA Request No. 1576889-000*

On December 10, 2022, Diehl submitted a FOIA request to the FBI alleging that "[b]etween 2010 and 2012 the FBI began seizing my personal property." See Declaration of Isabel Marie Lara, Acting Section Chief of the FBI's Record/Information Dissemination Section

("RIDS"), Information Management Division ("Lara Decl.") [Dkt. No. 30-3] ¶ 6; DOJ MSJ Exhibit A, First FOIA Request ("Req. No. 1576889-000") [Dkt. No. 30-4] at 2–3; Pl. Declaration in Support of Opposition and Reply ("Pl. Opp. Decl.") [Dkt. No. 33-1] ¶ 1. Diehl sought "all documentation in any form, that relates or pertains to the property seized and or searched[,]" and clarified that his request pertained "to any and all property, no matter how it was acquired or from who[m][,]" including any "property obtained in lieu of the search warrant." Lara Decl. ¶ 6.

On January 3, 2023, the FBI acknowledged receipt of Diehl's FOIA request, assigning it FOIA Request No. 1576889-000. See Lara Decl. ¶ 7; DOJ MSJ Exhibit B, FBI's Letter (Jan. 3, 2023) [Dkt. No. 30-4] at 5-6. Then, on February 1, 2023, the FBI informed Diehl that "unusual circumstances" applied to FOIA Request No. 1576889-000, delaying the agency's determination beyond 20 days. See Lara Decl. ¶ 8; DOJ MSJ Exhibit C, FBI Letter (Feb. 1, 2023) [Dkt. No. 30-4] at 8-9.

On May 5, 2023, Diehl sent a letter to the FBI asking for a status update. See Lara Decl. ¶ 9; DOJ MSJ Exhibit D, Pl. Letter (May 5, 2023) [Dkt. No. 30-4] at 11; Compl. at 3. On May 31, 2023, the FBI responded, advising Diehl that his Request was in the "perfected backlog awaiting assignment." See Lara Decl. ¶ 9; DOJ MSJ Exhibit D, FBI Letter (May 31, 2023) [Dkt. No. 30-4] at 12. On August 9, 2023, Diehl sent another letter to the FBI seeking a status update. See Lara Decl. ¶ 9; DOJ MSJ Exhibit D, Pl. Letter (Aug. 9, 2023) [Dkt. No. 30-4] at 13; Compl. at 3. On September 5, 2023, the FBI advised Diehl that FOIA Request No. 1576889-000 was still in the perfected backlog awaiting assignment. See Lara Decl. ¶ 9; DOJ MSJ Exhibit D, FBI Letter (Sept. 5, 2023) [Dkt. No. 30-4] at 14.

On February 2, 2024, Diehl requested expedited processing of FOIA Request No. 1576889-000, stating that he required the requested material for use in his post-conviction

proceedings, and arguing that failure to timely provide the material violated his due process rights. See Lara Decl. ¶ 10; DOJ MSJ Exhibit E, Pl. Letter (Feb. 2, 2024) [Dkt. No. 30-4] at 17–19. On February 27, 2024, the FBI denied Diehl's request for expedited processing, finding that he did not provide a sufficient basis for such relief. See Lara Decl. ¶ 11; DOJ MSJ Exhibit F, FBI Letter (Feb. 27, 2024) [Dkt. No. 30-4] at 21–22; Compl. at 3. Diehl administratively appealed this decision to the FBI's Office of Information Policy ("OIP") on March 14, 2024. See Lara Decl. ¶ 12; DOJ MSJ Exhibit G, Appeal No. 1576889-000 (Mar. 14, 2024) [Dkt. No. 30-4] at 24–25; Compl. at 3. On April 2, 2024, the OIP acknowledged receipt of the appeal, assigning it Appeal No. 1576889-000, see Lara Decl. ¶ 13; DOJ MSJ Exhibit H, OIP Letter (Apr. 2, 2024) [Dkt. No. 30-4] at 27; Compl. at 3. On May 9, 2024, the OIP informed Diehl that it had affirmed the FBI's denial of expedited processing. See Lara Decl. ¶ 14; DOJ MSJ Exhibit I, Appeal No. 1576889-000 (Mar. 14, 2024) [Dkt. No. 30-4] at 29–30.

### *B. FOIA Request No. 1590876-000*

On April 12, 2023, Diehl submitted a FOIA request to the FBI seeking "all information, including reports, transcripts, audio and or video recordings, summary reports, emails concerning communications with Government witness Ken Courtney or either of his two attorney[]s[,] John Foster, Brian Camareno[,]" and any records about Diehl himself. See Lara Decl. ¶ 15; DOJ MSJ Exhibit J, Second FOIA Request ("Req. No. 1590876-000") [Dkt. No. 30-4] at 32–33; Compl. at 2.

On May 1, 2023, the FBI acknowledged receipt of Diehl's FOIA request, assigning it FOIA Request No. 1590876-000. See Lara Decl. ¶ 16; DOJ MSJ Exhibit K, FBI Letter (May 1, 2023) ("DOJ MSJ Exhibit K, FBI Letter") [Dkt. No. 30-4] at 35–38. Furthermore, the FBI issued a "Glomar response," declining to confirm or deny the existence of the requested records for some

of the third-parties named in the FOIA Request. See DOJ MSJ Exhibit K, FBI Letter at 36. On May 12, 2023, Diehl administratively appealed the FBI's Glomar Response. See Lara Decl. ¶ 18; DOJ MSJ Exhibit M, Appeal No. A-2023-01327 [Dkt. No. 30-4] at 46–47. On May 26, 2023, the OIP acknowledged receipt of Diehl's appeal, assigning it Appeal No. A-2023-01327. See Lara Decl. ¶ 19; DOJ MSJ Exhibit N, OIP Letter (May 26, 2023) [Dkt. No. 30-4] at 49.

In the meantime, on May 30, 2023, the FBI sent a letter to Diehl advising him of the estimated cost of production and providing an option to reduce the scope of FOIA Request No. 1590876-000. See Lara Decl. ¶ 17; DOJ MSJ Exhibit L, FBI Letter ("DOJ MSJ Exhibit L") (May 30, 2023) [Dkt. No. 30-4] at 40–44. The FBI also directed Diehl to respond in writing and pay all estimated costs within 30 days. But Diehl neither responded nor submitted payment. See DOJ MSJ Exhibit L at 40-44.

On June 5, 2023, the OIP informed Diehl that it was affirming the FBI's Glomar response, and it closed Appeal No. A-2023-01327. See Lara Decl. ¶ 20; DOJ MSJ Exhibit O, OIP Letter (June 5, 2023) [Dkt. No. 30-4] at 51–52; Compl. at 2.

*C. The Current Case*

Diehl filed this lawsuit on July 15, 2024. See Compl. After the DOJ was served, it filed a Status Report indicating that the FBI was still processing Diehl's FOIA Requests. See DOJ Status Report [Dkt. Nos. 11]. Thereafter, the DOJ began filing rolling Status Reports updating the Court and Diehl of the FBI's progress, see DOJ Status Reports [Dkt. Nos. 18, 21, 23], to which Diehl filed his own Responses. See Pl. Status Reports and Responses [Dkt. Nos. 16, 20].

On July 11, 2025, the FBI made its first and final release of records to Diehl. See Lara Decl. ¶ 22; DOJ MSJ Exhibit P, FBI Letter (July 11, 2025) [Dkt. Not. 30-4] at 54–57; DOJ MSJ Exhibit Q, Vaughn Index ("VI") [Dkt. No. 30-4] at 59–71; Pl. MSJ Declaration ("Pl. MSJ

Decl.") [Dkt. No. 24] at 1–2, ¶ 5. It appears that the FBI identified 197 total pages of responsive records, withheld 69 pages in full, and released 128 pages of records—two pages in full and 126 pages in part. See DOJ MSJ Exhibit Q, VI at 59.

On November 13, 2025, Diehl filed the pending Motion for Summary Judgment. In response, the DOJ proposed a briefing schedule, see DOJ Status Report [Dkt. No. 25], which the Court adopted in part on December 10, 2025. See Minute Order (Dec. 10, 2025). On May 5, 2026, the DOJ filed its pending Cross-Motion for Summary Judgment, and the Court entered an Order on May 12, 2026 advising Diehl of his obligation to respond to that Cross-Motion. See Neal Order [Dkt. No. 31]. Diehl filed his combined Reply and Opposition ("Opp.") [Dkt. Nos. 33–34] on June 15, 2026. On July 7, 2026, the DOJ filed a Motion to Extend [Dkt. No. 25] its deadline to file a reply, which the Court granted on July 8, 2026, extending its deadline to July 24, 2026. See Minute Order (July 8, 2026). DOJ finally filed its Reply on September 22, 2026, but did not address the defects in its FOIA response. See Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Dkt. No. 36-1].

## I. LEGAL STANDARD

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" FBI v. Abramson, 456 U.S. 615, 621 (1982) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)). "[D]isclosure, not secrecy, is the dominant objective of the Act." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976). FOIA "mandates release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions." Hunton & Williams LLP v. EPA, 346 F. Supp. 3d 61, 72 (D.D.C. 2018) (citing Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011); Students Against Genocide v. Dep't of State, 257 F.3d 828, 833

(D.C. Cir. 2001); 5 U.S.C. § 552(a)(3)(A), (b)). And "even if some materials from the requested record are exempt from disclosure, any reasonably segregable information from those documents must be disclosed after redaction of the exempt information," unless the non-exempt portions are "inextricably intertwined with exempt portions." Hunton & Williams LLP v. EPA, 346 F. Supp. 3d at 72. (internal quotation marks omitted) (quoting Johnson v. EOUSA, 310 F.3d 771, 776 (D.C. Cir. 2002)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. United States Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). An agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." Competitive Enter. Inst. v. EPA, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." Elec. Priv. Info. Ctr. v. DEA, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)).

## III. DISCUSSION

### *A. Adequacy of the Search*

"The adequacy of an agency's search is measured by a 'standard of reasonableness'" under the attendant circumstances. Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

To satisfy its burden, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." Elliott v. Dep't of Agric., 596 F. 3d 842, 851 (D.C. Cir. 2010) (quotation omitted), cert. denied, 560 U.S. 973 (2010). It may base its showing on declarations submitted in good faith, provided that they explain, in reasonable detail, the scope and method of the search. See Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal citations omitted); see also Truitt v. Dep't of State, 897 F.2d at 542. "[T]he agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting Valencia–Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)).

Once the agency has provided a reasonably detailed declaration in good faith, "the [FOIA plaintiff] may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." Morley v. C.I.A., 508 F.3d at 1116 (internal citation and quotation marks omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance[.]" North v. U.S. Dep't of Justice, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam)). On the other hand, if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt v. Dep't of State, 897 F.2d at 542.

Here, the Court is left with substantial doubt regarding the sufficiency of the FBI's search. The FBI has submitted a Declaration executed by Isabel Marie Lara, the Acting Section Chief of the FBI's Record/Information Dissemination Section, Information Management Division. See Lara Decl. ¶ 1. Lara possesses seniority and tenure with the FBI, and she has experience in

evaluating FOIA requests and similar requests for information. See id. ¶¶ 1–3. She is also well-versed in the FOIA procedures employed by the FBI, and she has personal knowledge of Diehl's FOIA Requests. See id. ¶¶ 2–3. Although Lara's Declaration has clearly been made in good faith, it is not detailed enough to establish that the FBI conducted an adequate search.

The primary defect in Lara's Declaration, and in the DOJ's briefing overall, is that it is unclear whether the FBI conducted a search and ultimately issued a first and final response and production in response to FOIA Request No. 1576889-000, or in response to FOIA Request No. 1590876-000. See Pl. Opp. Decl. ¶¶ 4–6. Lara's Declaration reads as if the FBI acted in response to a single FOIA Request despite the FBI's acknowledgement that two separate requests are at issue in this case, and there is no suggestion that those Requests were consolidated. Lara attests that the FBI searched its indices by using the search term "David Diehl," and then searched again within Diehl's investigative file for information related to acknowledged third party Brian Camareno. See Lara Decl. ¶¶ 33, 41. This statement suggests that the FBI's search was conducted in response to FOIA Request No. 1590876-000—because that Request seeks, among other things, information regarding both Diehl and Camareno, and Camarena was mentioned only in FOIA Request No. 1590876-000.

Lara's failure to specify which Request the FBI's search was intended to satisfy is fatal, because the law does not permit the Court to speculate. See New Orleans Workers' Cntr. for Racial Justice v. U.S. Immigr. & Customs Enf't, 373 F. Supp. 3d 16, 69 (D.D.C. 2019) (while the risks associated with disclosure in a FOIA case "may ultimately be obvious . . . in the absence of any detailed description of the instructions for performing records checks," the court "cannot assume," without supporting evidence at summary judgment, that the information was properly withheld); Heritage Found. v. U.S. Dep't of Justice, Civil Action No. 23-1148 (JEB), 2024 WL

1856418, at *6 (D.D.C. Apr. 29, 2024) ("Absent supporting detail, the Court cannot assume that [a] premise is true" at summary judgment in a FOIA case); see also Nat'l Sec. Counselors v. CIA, 931 F. Supp. 2d 77, 103–05 (D.D.C. 2013) (it was "not possible to discern from the [agency] records themselves which records [were] responsive to which request," and the agency was obligated to produce responsive records even if those records were duplicative to those produced before to the same plaintiff in response to previous FOIA requests.).

Even if the Court were to assume that the FBI's search and production were made in response to FOIA Request No. 1590876-000, the DOJ has not provided evidence as to what search and production, if any, was performed in response to FOIA Request No. 1576889-000. See Opp. at 1–2; Pl. Opp. Decl. ¶¶ 4–6. That FOIA Request seeks, from any source, material connected to Diehl's property that was either seized or searched. Based on the current record, there is no indication that the FBI used precise search terms in its automated indices, or otherwise engaged in a search tailored to find responsive material about Diehl's seized or searched property. See Morley v. CIA, 508 F.3d at 1122 (concluding that the agency's declaration was insufficient because it did not "provide . . . information about the search strategies of the components charged with responding to [the plaintiff's] FOIA request"); see also Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 502 (D.D.C. 1997) ("In contrast to defendant's description of the places it searched, it is unclear precisely what defendant looked for during this search. The portion of the affidavit that is intended to support the adequacy of the agency's search and describe its scope states only that defendant looked for records 'responsive to the Plaintiff's FOIA request.' . . . This is precisely the type of description that the Court of Appeals has described as 'conclusory and unilluminating' and therefore unacceptable.") (quoting Steinberg v. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994)).

Lara does not specifically address FOIA Request No. 1576889-000. Therefore the Court cannot evaluate: (1) the adequacy of the FBI's search; (2) whether a perfected backlog (or a denial of a request for expedited processing) justifies the outright discharge of a pending FOIA request, if that is what the agency is proposing; or (3) any reason for why the FBI may not have conducted a search in response to FOIA Request No. 1576889-000.

Even setting aside these questions, there is additional confusion about the FBI's methodology. First, Lara attests that the FBI employed "a search cut-off date of December 31, 2012, which is the date of the FBI's initial search for records[,]" see Lara Decl. ¶ 41, and she notes that any records created after that date were likely treated as unresponsive, see id. n.12. But Lara does not explain how or why this date, December 31, 2012 – more than a decade before Diehl's FOIA Request(s) – is appropriate. See id. ¶ 6 n.2.

Second, the number of pages at issue is unclear. Lara states that the FBI identified a total of 197 responsive pages, and that it released two of those pages in full and 126 pages in part, withholding the rest. See Lara Decl. ¶ 87. But later in the same paragraph, Lara states that the FBI "determined 816 pages could be released in full without redaction, as there was no foreseeable harm to an interest protected by a FOIA exemption." Id. ¶ 87(a). The FBI never clarifies this contradiction. See Pl. Opp. Decl. ¶ 5. The Court cannot speculate. See Dillon v. U.S. Dep't of Justice, Civil Action No. 17-1716 (RC), 2019 WL 249580, at *7 (D.D.C. Jan. 17, 2019) (finding that it was unclear whether the DOJ conduced a reasonable search because the agency never "substantively addressed" potential outstanding FOIA production and left the court "guessing as to what may have caused the alleged discrepancy").

When an agency's declaration is insufficient, the Court "generally will request that an agency supplement its supporting declarations[,]" rather than order discovery, conduct in

camera review, or engage in more intensive measures. See Landmark Legal Found. v. EPA, 959 F. Supp. 2d 175, 183–84 (D.D.C. 2013) (quoting Wolf v. CIA, 569 F. Supp. 2d 1, 10 (D.D.C. 2008); citing COMPTEL v. FCC, 910 F. Supp. 2d 100, 114 (D.D.C. 2012)); see also DeBrew v. Atwood, 792 F.3d 118, 122 (D.C. Cir. 2015) ( when it cannot be determined whether there was an adequate search, "the district court may order [the agency] to submit a reasonably detailed [supplemental] affidavit upon which the reasonableness of its search can be judged.") (first alteration in original) (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Accordingly, the Court finds that the FBI must supplement the existing record in order to address the questions discussed in this Opinion. See Transgender Law Cntr. v. U.S. Immigr. and Customs Enf't, 775 F. Supp. 3d 131, 145 (D.D.C. 2025) ("To remedy this lack of clarity in ICE's filings and ensure that ICE did indeed conduct a search [of two specific individuals] . . . this Court will order ICE to file a further declaration confirming the search[.]"). And because the Court cannot yet reach a conclusion regarding the adequacy of the FBI's search, it cannot yet rule on the propriety of its withholdings or make a segregability determination. See Thomas v. U.S. Dep't of Justice, 245 F. Supp. 3d 164, 165-66 (D.D.C. 2017).

An Order consistent with this Opinion will be issued this same day.

Paul L. Friedman

PAUL L. FRIEDMAN
United States District Judge

DATE: 9|28|26